Thompson *v.* Bird.

JOHN  H.  THOMPSON

*v.*

FREDERICK  W.  BIRD et ux. et al.

[Filed July 20th, 1898.]

1. When a mortgagor successively sells portions of mortgaged premises by general warranty deeds, upon a foreclosure of the mortgage any of the mortgaged premises still owned by the mortgagor will be sold first, and if the mortgage debt still remains unpaid the parcels last sold by him will be sold next, and so on, in the inverse order of the deeds, until the mortgage debt is satisfied.

2. Where a purchaser of a part of mortgaged premises assumes the payment of all or a portion of the mortgage on the whole of such premises, the land so purchased is liable for the mortgage debt, or such portion of it assumed by the purchaser, before the remaining portion of the mortgaged premises held by the mortgagor or by subsequent purchasers from the mortgagor can be sold in satisfaction of the mortgage debt.

3. Where there was a mortgage for $1,200 on a certain tract of land, and two parcels of said land were sold by the mortgagor under conveyance wherein each grantee assumed the payment of a certain mortgage for $600 on the parcels conveyed, although there was no mortgage for $600 on either of said parcels, the assumption of the grantees is equivalent to an assumption to pay $600 of the mortgage on the whole tract.

On exceptions to master's report.

The bill was filed to foreclose a mortgage upon a tract of land in the city of Plainfield given by F. W. Bird and wife to one Charles G. Ross on May 3d, 1893, and assigned by Ross to

Thompson *v.* Bird.

the complainant on December 18th, 1895. The mortgage was for $1,200, and there is now due for principal and interest the sum of $1,315.05. Portions of the mortgaged premises have been sold by the mortgagor since the execution of the mortgage. It is to that part of the master's report which establishes the order in which the portions shall be sold that the exceptions are interposed. The sales by the mortgagor were made in the following order: of the first lot to Mary Newell on January 30th, 1894; of the second lot to Sarah Brady on September 1st, 1896, who, on the same day, conveyed the said lot to Benjamin W. Ellicott. Two smaller lots, one in the rear of the lots sold, remain the property of the mortgagor.

The master reports that these two smaller lots should be first sold, and then the lot owned by Ellicott and finally the lot owned by Mrs. Newell. This direction follows the ordinary rule of selling in the inverse order in which the lots were conveyed. But it appears that in the deed to Mary Newell it was stated that the land conveyed was subject to a $600 mortgage, which the grantee assumed and agreed to pay, and in the deed to Sarah Brady it was stated that the plot sold was subject to a mortgage of $600, which the grantee agreed to assume and pay. In the deed from Brady to Mr. Ellicott there is this clause: "Conveyed subject to a certain mortgage thereon for $600, made by Frederick W. Bird and wife to C. Ross." In addition to this, which appears upon the face of the deeds submitted to the master, there is the testimony of Mr. Ellicott, the substance of which is that Sarah Brady is the mother-in-law of Mr. Bird, the mortgagor; that Ellicott negotiated the purchase of his lot with Mr. Bird and that Mr. Bird said that he would convey said lot to Sarah Brady and have her make a deed to him (Ellicott); that during said negotiations Bird stated that the lot conveyed was encumbered with a certain mortgage for $600 made by Bird to C. Ross, and by no other encumbrances of any kind whatsoever.

*Mr. Nelson Runyon,* for the complainant.

*Mr. Benjamin W. Ellicott, pro se.*

REED, V. C.

It is entirely settled in this state that where a mortgagor successively sells portions of mortgaged premises by general warranty deeds, upon foreclosure of the mortgage, the portions will be ordered sold in the inverse order of the several conveyances. Any of the mortgaged land still owned by the mortgagor will be first sold, and if the mortgage debt still remains in part unpaid, the parcels last sold next and so on in the inverse order of the deeds, until the mortgage debt is satisfied. This rule is so entirely settled that citations of the cases in this state from *Shannon* v. *Marselis, Saxt. 413,* down to the present time, in which this rule has been repeatedly recognized, would be useless.

The equity which throws the burden of the mortgage debt primarily upon the remaining portion owned by the mortgagor is apparent. Having conveyed a part of the mortgaged land with full covenants, without reference to any lien or encumbrances, if thereafter the part so conveyed is called upon to pay any part of the mortgage debt, the mortgagor is liable to the grantee upon his covenant. To avoid, if possible, circuity of action, the remaining property of the mortgagor is sold first. If such remaining part is insufficient to pay all of the secured debt, yet it is equitable that as little as possible be left for the grantee to pay.

As between successive grantees, each takes his title knowing that the land still held by the mortgagor is primarily liable for the whole debt, and if he chooses to buy a portion of said lands he will take it subject to this liability. This liability is, of course, modified if he buys only a part of the mortgagor's remaining land, and the part so sold being secondarily liable to that of the still unsold portion. This is the reason of the equity underlying the ordinary method of sale of portions of mortgaged premises by deeds professing to confer a title without reference to encumbrances. But if any purchaser of a part of mortgaged premises, instead of bargaining for a clear title, chooses to assume the payment of all or a part of an encumbrance upon the whole of such premises, such purchaser cannot equitably ask that the remaining portion shall be first sold to

Thompson v. Bird.

answer the mortgage debt, for it is apparent that, after such person gets the land from a mortgagor at a less price on account of the encumbrances, the payment of which he assumes, he cannot ask that the land of the mortgagor shall be sold to relieve his own land of the debt which he has promised to pay as a part of the consideration for his purchase. For these obvious reasons the land of such purchaser, who has assumed to pay a mortgage, or a part of a mortgage, is liable for all or such part of the mortgage debt before the land of the mortgagor or the land of a subsequent purchaser from the mortgagor. *Wikoff* v. *Davis, 3 Gr. Ch. 224; Engle* v. *Haines et al., 1 Halst. Ch. 186; Black* v. *Morse, 3 Halst. Ch. 509; Hill's Administrator* v. *McCarter, 12 C. E. Gr. 41; Warwick* v. *Ely, 2 Stew. Eq. 82, 85.*

In the present case, when the two conveyances were made respectively to Mrs. Newell and Mrs. Brady there was a mortgage upon the entire property amounting to $1,200. Each deed contained an assumption to pay a mortgage of $600. The master found as a fact that there was no $600 mortgage upon the property and therefore he found that there was nothing upon which the assumption could operate. For this reason he puts the primary liability for the payment of the $1,200 mortgage upon the remaining property of the mortgagor.

I am of the opinion that this method of dealing with the defendants is erroneous. In my judgment the mention of the $600 mortgages is with respect to a division of the $1,200 mortgage into two parts. What the mortgagor meant was that each of the lots sold by him should be liable for the payment of the mortgage upon the premises to the extent of $600.

This seems to me to be the equitable conclusion from the facts without extrinsic explanation.

It is probable, however, that the explanation of the way in which the clauses appear in the respective deeds is found in the statement in the bill, charged to be made upon information received by the complainant from the mortgagor. This statement is that the mortgagor had intended to make two $600 mortgages, one upon each of the two tracts conveyed to Mrs. Newell

and Mrs. Brady respectively, which mortgages were to take the place of the $1,200 mortgage upon the whole tract. These $600 mortgages were never made and the $1,200 was never divided. But the assumption of the payment of a $600 mortgage by Mrs. Newell was the equivalent of an assumption to pay $600 of the mortgage upon the whole tract, and when Mr. Ellicott bought his lot he took it subject to the remaining portion of the $1,200 mortgage, *i. e.*, $600.

The consideration paid for the two tracts was undoubtedly fixed with the understanding that the title to each lot was taken subject to this lien. I can perceive no reason for relieving the land of either of the grantees from its liability to pay the amount of the lien so fixed, nor for fixing upon Mr. Ellicott's tract a liability to pay a greater sum before Mrs. Newell's tract is called upon to pay anything.

I think the exceptions to the master's report are valid. The lot sold to Mrs. Newell should be first sold to raise $600, with unpaid interest from the time she purchased, and the lot conveyed to Mrs. Brady should be sold to raise $600, with unpaid interest from the time of the conveyance, and that the mortgagor's remaining land be sold last to raise any balance due after the sales of the above-mentioned tracts.